UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONICA O'HARA, | No. 2:25-cv-02297-TLN-AC |
| Plaintiff, | |
| v. | **ORDER** |
| CALIFORNIA HIGHWAY PATROL, et. al., | |
| Defendants. | |

This matter is before the Court on Defendant Michael Sullivan's[1] ("Defendant") Motion to Dismiss.  (ECF No. 13.)  Plaintiff Monica O'Hara ("Plaintiff") filed an opposition.  (ECF No. 14.)  Defendant filed a reply.  (ECF No. 16.)  For the reasons set forth below, the Court DENIES Defendant's Motion to Dismiss.

///

///

///

///

///

///

///

---

[1]     Defendants California Highway Patrol, Tyler Eccles, and Jason Aston are not parties to the instant motion.

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The instant wrongful death action arises from the fatal shooting of Tyler Balaskovits ("Decedent") during an encounter with law enforcement on December 26, 2024.  (ECF No. 1 at 2.)  Plaintiff is Decedent's mother and Defendant is an investigatory officer employed by the County of Sacramento who was acting within the course and scope of his employment and under the color of law.  (*Id.* at 2–3.)  Plaintiff alleges, on the day of the incident, Defendant encountered Decedent and gave him permission to push his truck down Old Sacramento Road.  (*Id.* at 3, 6.)  Plaintiff further alleges Defendant did not contact California Highway Patrol and other law enforcement agencies to indicate that he had given Decedent permission to push his truck down the road.  (*Id.*)  Plaintiff contends Officer Jason Carl Aston ("Aston") arrived at the scene, observed Defendant performing traffic control behind Decedent, and shortly thereafter, shot Decedent three times.  (*Id.* at 6–7.)

On August 13, 2025, Plaintiff filed a Complaint asserting, among other claims, a negligence claim against Defendant.  (*Id.* at 15–16.)  On November 14, 2025, Defendant filed the instant motion to dismiss.  (ECF No. 13.)

## II.    STANDARD OF LAW

A motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Rule 8(a) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court is bound to give the plaintiff the benefit of every

2

reasonable inference drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570.

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In ruling on a motion to dismiss, a court may only consider the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

///

3

If a complaint fails to state a plausible claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

**III.    ANALYSIS**

Defendant moves to dismiss Plaintiff's negligence claim against him for failure to state a claim. (ECF No. 13-1 at 1.) To establish negligence liability, a plaintiff must sufficiently show "that [the] defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." *Hayes v. County of San Diego*, 57 Cal. 4th 622, 629 (2013) (citing *Nally v. Grace Community Church*, 47 Cal. 3d 278 (1988)). Defendant specifically argues (1) Defendant did not owe Decedent a duty of care and (2) Plaintiff fails to allege any causal connection between Defendant's actions and Aston's use of lethal force. (ECF No. 13-1 at 4.) The Court considers these arguments in turn.

A.    Whether a Duty of Care Existed

Defendant contends, absent a special relationship or statute creating a special duty, police officers may not be held liable for their failure to provide police protection to individual members of the general public.[2] (ECF No. 13-1 at 3.) In opposition, Plaintiff argues the allegations in the Complaint are sufficient to establish a special relationship between Defendant and Decedent, giving rise to a duty of care. (*Id.*)

Under the Good Samaritan doctrine, law enforcement officers may voluntarily assume a protective duty towards a certain member of the public and undertake action on behalf of that person, thereby inducing reliance. *Clemente v. State of California*, 40 Cal. 3d 202, 213 (1985).

---

[2]    Defendant also argues the duty to act reasonably when using lethal force does not extend to an officer not alleged to have used lethal force. (ECF No. 13-1 at 4 (*citing Bailey v. Cnty. of Stanislaus*, No. 2:24-CV-03231-JAM-AC, 2025 WL 1880965, at *3 (E.D. Cal. July 8, 2025).) In opposition, Plaintiff argues *Bailey* does not support a distinction between officers who use deadly force and those who do not and that the tactical conduct and decisions preceding the use of deadly force are relevant considerations in determining whether the use of deadly force gives rise to negligence liability. (ECF No. 14 and 4.) Because the Court concludes a special relationship existed between Defendant and Decedent, the Court need not and does not address the parties' arguments as to whether Defendant owed Decedent a general duty.

4

Such a duty may arise "when an express promise to warn of a danger has induced reliance, or when the actions of the [officer] place a person in peril or increase the risk of harm." *Id.*

Here, in her Complaint, Plaintiff alleges Defendant was acting in the course and scope of his employment with the Sacramento County District Attorney's Office and acting under the color of law. (ECF No. 1 at 3.) Plaintiff further alleges Defendant had given Decedent permission to push his truck. (*Id.* at 6.) According to Plaintiff, Defendant was performing traffic control behind Decedent, ensuring that he could continue to push his truck without danger. (*Id.*) Construing the allegations in the light most favorable to Plaintiff, the Court finds a special relationship existed between Defendant and Decedent because Defendant took actions which increased the risk of harm to Decedent.

Further, while not cited by the parties, the Court finds *Mann v. California*, 70 Cal. App. 3d 773 (1977) instructive. In *Mann*, a highway patrolman responded to the call of a stranded motorist, pulled in his car behind two stalled cars on the freeway, and placed his hazard lights on. *Id.* at 776. The patrolman did not instruct the drivers in the stalled cars or other motorists to stand in a safe location, place highway flares, or wait for the newly arrived tow truck to assume his protective position before leaving. *Id*. at 776-77. The two stalled cars were later hit by an oncoming car and a motorist was injured. *Id*. The court found the officer had formed a special relationship with the motorists when he affirmatively stopped to help them. *Id*. at 779-80. Therefore, "as a state traffic officer who had acquainted himself with their plight, [he] had a duty to exercise ordinary care to protect them from such risk." *Id*.

Plaintiff's contentions are similar to those in *Mann*. In alleging that Defendant had given verbal instruction to Decedent and conducted himself in a manner to protect him on the roadway, the facts support a finding that a special relationship was likely formed. *See Williams v. State of California*, 34 Cal.3d 18, 24 (1983) (Special relationships have been found "when the state, through its agents, voluntarily assumes a protective duty toward a certain member of the public and undertakes action on behalf of that member, thereby inducing reliance."). Accordingly, Defendant owed a duty of care to Decedent.

///

5

B.    <u>Whether a Causal Connection is Sufficiently Alleged</u>

Defendant argues Plaintiff fails to allege any causal connection between Defendant's actions (permitting Decedent to move his car in a certain direction) and Aston's decision to use lethal force.  (ECF No. 13-1 at 4.)  In opposition, Plaintiff asserts she alleges Defendant affirmatively placed Decedent in danger by failing to communicate to the responding CHP officer that he had impliedly directed Decedent to continue pushing his vehicle, thereby increasing the risk that Aston would issue conflicting commands and by failing to communicate with Aston after he arrived and came within Defendant's view.  (ECF No. 14 at 6.)  Plaintiff further argues the confusion and lack of coordination created a scenario in which a stranded motorist was likely to receive conflicting commands, which was the driving force behind his fatal shooting.  (*Id.*)

Construing the allegations in the light most favorable to Plaintiff, the Court finds Plaintiff sufficiently alleges a causal connection between Defendant's actions and the use of lethal force.

**IV.    CONCLUSION**

For the foregoing reasons, the Court DENIES Defendant's Motion to Dismiss.  (ECF No. 13.)

IT IS SO ORDERED.

Date: June 15, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

6